# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### DIVISION MIAMI
### CASE NO. 06-20145-CIV-ALTONAGA/Turnoff



FIFTY-SIX HOPE ROAD MUSIC, LTD. )
and ZION ROOTSWEAR LLC., )
    Plaintiffs, )
     )
    v. )
     )
AAA SILK SCREEN CORP.; E.D.S. )
ENTERPRISES, Inc. d/b/a PLATINUM )
IMAGE; T-SHIRT MASTERS, INC.; )
DES DISTRIBUTOR, INC.; DAVID GREENE, )
 Individually and as officer, director, employee )
and shareholder of AAA SILK SCREEN CORP. )
and E.D.S. ENTERPRISES, INC. d/b/a )
PLATINUM IMAGE, and T-SHIRT )
MASTERS, INC. and DES DISTRIBUTOR, INC.; )
ERIC GREENE, Individually and as officer, director )
employee and shareholder of AAA SILK )
SCREEN CORP. and E.D.S. ENTERPRISES, )
INC. d/b/a PLATINUM IMAGE; SHARYN )
GREENE, Individually and as officer, )
director, employee and shareholder of )
AAA SILK SCREEN CORP. and E.D.S. )
ENTERPRISES, INC. d/b/a PLATINUM )
IMAGE and T-SHIRT MASTERS, INC. and )
DES DISTRIBUTOR, INC.; RESORTS SUPER )
STORE, INC. d/b/a NAUTICAL BREEZE and )
PINCHAS BABAYOFF, Individually and as )
officer, director, employee and shareholder of )
RESORTS SUPERSTORE, INC. d/b/a )
NAUTICAL BREEZE; OCEAN 14, INC.; ROUHAD )
EZZEDDINE, individually and as officer, director )
employee and shareholder of OCEAN 14, INC.; )
BEACH BLITZ CO.; DORON DAR, individually and )
as officer, director, employee and shareholder of )
BEACH BLITZ CO.; SPORTSWEAR TOWN, INC.; )
AVRAHAM CHANERO, individually and as officer, )
director, employee and shareholder of SPORTSWEAR )
TOWN, INC.; KENY, INC.; 853 NORTH ATLANTIC )



CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

BOULEVARD CORP.; THIS & THAT, INC.; BABA'S )
JEWELRY, INC.; 437 SOUTH ATLANTIC )
BOULEVARD CORP.; LALWANI ENTERPRISES, )
INC.; NARAIN LALWANI, individually and as )
officer, director, employee and shareholder of KENY, )
INC., 853 NORTH ATLANTIC BOULEVARD CORP., )
THIS & THAT, INC., BABA'S JEWELRY, INC., )
437 SOUTH ATLANTIC BOULEVARD CORP., and )
LALWANI ENTERPRISES, INC.; JAMNA )
LALWANI, individually and as officer, director, )
employee and shareholder of 853 NORTH ATLANTIC )
BOULEVARD CORP.; DEVKRISHIN LALWANI, )
individually and as officer, director, shareholder and )
employee of THIS & THAT, INC.; MOHAN )
LALWANI, individually and as officer, director, )
shareholder and employee of THIS & THAT, INC.; )
SHANDKARDAS LALWANI, individually and as )
officer, director, shareholder and employee of )
437 SOUTH ATLANTIC BOULEVARD CORP., and )
LALWANI ENTERPRISES, INC.; SUNWEAR )
U.S.A., INC.; STYLE IN, CORP.; DUVAL STYLE, )
INC.; COOL STYLE USA, INC.; BIKINI KEY, INC.; )
WILD STYLE USA, INC.; SUNSET SPORT CORP.; )
NEIL NISSAN HAMUY, individually and as officer, )
director, shareholder and employee of SUNWEAR )
U.S.A., INC., STYLE IN, CORP., DUVAL )
STYLE, INC., COOL STYLE USA, INC., )
BIKINI KEY, INC., SUNSET SPORT CORP. and )
WILDSTYLE USA, INC.; JAMIE HAMUY, )
individually and as officer, director, shareholder )
and employee of SUNWEAR U.S.A. INC., )
STYLE IN, CORP., and COOL STYLE USA, INC.; )
ELIAHU HAMUY, individually and as officer, )
director, shareholder and employee of STYLE IN, )
CORP.;  STEVEN KRAFT, individually and as )
officer, director, shareholder and employee of )
COOL STYLE USA, INC. and WILDSTYLE )
USA, INC.; SEF MANAGEMENT d/b/a EXCESS; )
RONEN HAYUN, Individually and as officer, )
director, shareholder and employee of SEF )
MANAGEMENT, INC. d/b/a EXCESS; )
HIAM HAYUN, individually and as officer, director, )
shareholder and employee of SEF )
MANAGEMENT, INC. d/b/a EXCESS; )
GRAVITY CLOTHING, INC.; NENO BOTTON, )
individually and as officer, director, shareholder and )

2

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

employee of **GRAVITY CLOTHING INC.;** )
**BRIAN BOTTON, individually and as officer,** )
**director, shareholder and employee of** )
**GRAVITY CLOTHING INC.; DINO PETRECCIA** )
**individually and as officer, director, shareholder and** )
**employee of GRAVITY CLOTHING INC.;** )
**MOSH PITT; ALEX ZARFATI, individually** )
**and as officer, director, shareholder and** )
**employee of MOSH PITT; MARCO ZARFATI,** )
**individually and as officer, director, shareholder and** )
**employee of MOSH PITT; SMILE MON INC;** )
**SMILE MON OF KEY WEST INC.; YAKOV** )
**BLIVES a/k/a YARON BLIVES, Individually and** )
**as officer, director, shareholder and employee of** )
**SMILE MON INC. and SMILE MON OF KEY** )
**WEST, INC.** )
 )
    **Defendants.** )
_____ )

### *FIRST AMENDED COMPLAINT*

This is an action for infringement of a federally registered trademark and for federal unfair competition under the Lanham Act, *inter alia*, 15, U.S.C. §§ 1114, 1125(a); infringement of the common law right of publicity and commercial appropriation of celebrity identity; unauthorized publication of name and likeness in violation of 540.08 Fla. Stat.; common law trademark infringement, breach of contract/settlement agreements and for specific performance.

### *PARTIES*

1.  Plaintiff, Fifty-Six Hope Road Music, Ltd., (hereinafter "Hope Road") is a corporation existing under the laws of the Commonwealth of Bahamas, having a principal place of business at Aquamarine House, Cable Beach, Nassau, Bahamas.

2.  Plaintiff, Zion Rootswear, LLC (hereinafter "Zion" or collectively with Hope Road as "Plaintiffs") is a Limited Liability Corporation duly organized and

existing under the laws of the State of Florida, having a principal place of business at 465 Tresca Road, Jacksonville, Florida.

3.      For clarity, Defendants AAA Silk Screen Corp., E.D.S. Enterprises, Inc. d/b/a Platinum Image, T-Shirt Masters, Inc., DES Distributor, Inc. David Greene, Eric Greene and Sharyn Greene will be collectively referred to throughout the Complaint and pleadings as the "Greene Defendants."

4.      The defendants, Resorts Superstore d/b/a Nautical Breeze and Pinchas Babayoff will be collectively referred to throughout the Complaint and pleadings as the "Nautical Defendants."

5.      The defendants, Ocean 14, Inc. and Rouhad Ezzeddine will be collectively referred to throughout the Complaint and pleadings as the "Ocean Defendants."

6.      The defendants, Beach Blitz Co. and Doron Dar will be collectively referred to throughout the Complaint and pleadings as the "Blitz Defendants."

7.      The defendants, Sportswear Town, Inc. and Avraham Chanero will be collectively referred to throughout the Complaint and pleadings as the "Sportswear Defendants."

8.      The defendants, Keny, Inc., 853 North Atlantic Boulevard Corp., This & That, Inc., Baba's Jewelry, Inc., 437 South Atlantic Boulevard Corp., Lalwani Enterprises, Inc., Narain Lalwani, Jamna Lalwani, Devkrishin Lalwani, Mohan Lalwani and Shandkardas Lalwani will be collectively referred to throughout the Complaint and pleadings as the "Lalwani Defendants."

9.      The defendants, Sunwear U.S.A., Inc., Style In, Corp., Duval Style, Inc., Cool Style USA, Inc., Bikini Key, Inc., Wild Style USA, Inc., Sunset Sport Corp., Neil

Nissan Hamuy, Eliahu Hamuy, Jamie Hamuy and Steven Kraft will be collectively referred to throughout the Complaint and pleadings as the "Sunwear Defendants."

10. The defendants, SEF Management, Inc. d/b/a Excess, Ronen Hayun and Iliam Hayun will be collectively referred to throughout the Complaint and pleadings as the "Excess Defendants."

11. The defendants, Gravity Clothing, Inc., Neno Botton, Brian Botton and Dino Petreccia will be collectively referred to throughout the Complaint and pleadings as the "Gravity Defendants."

12. The defendants, Mosh Pitt, Alex Zarfati and Marco Zarfati will be collectively referred to throughout the Complaint and pleadings as the "Mosh Defendants."

13. The defendants, Smile Mon Inc., Smile Mon of Key West Inc. and Yakov Blives a/k/a Yaron Blives will be collectively referred to throughout the Complaint and pleadings as the "Smile Mon Defendants."

14. All of the named defendants in this case will be collectively referred to as "Defendants" where the allegations pertain to all Defendants collectively.

15. Upon information and belief, Defendant, AAA Silk Screen Corp. ("AAA" and collectively as the "Greene Defendants"), is a Florida Corporation with a principal place of business at 2731 N.W. 30th Ave, Lauderdale Lakes, Florida and which maintains its business records at 19868 Dinner Key Drive, Fort Lauderdale, Florida.

16. Upon information and belief, Defendant, E.D.S. Enterprises, Inc. d/b/a Platinum Image ("EDS" and collectively as the "Greene Defendants"), is a Florida

Corporation with retail address locations of 18364 N.W. 7th Ave, Miami, Florida, and 900 W. Sunrise Boulevard, Fort Lauderdale, Florida, with a mailing address of 2731 NW 30th Street Ave, Lauderdale Lakes, Florida.

17. Upon information and belief, Defendant T-Shirt Masters ("Masters" and collectively as the "Greene Defendants") is a Florida Corporation with a principal address of Boynton Beach Mall, 801 Congress Avenue, Boynton Beach, Florida, with a mailing address of 2731 NW 30th Street Ave, Lauderdale Lakes, Florida.

18. Upon information and belief, Defendant DES Distributor, Inc. ("DES" and collectively as the "Greene Defendants") is a Florida Corporation with a principal address of 19868 Dinner Key Drive, Boca Raton, Florida.

19. Upon information and belief, Defendant, David Greene ("David Greene" and collectively as the "Greene Defendants") is an individual residing at 19868 Dinner Key Drive, Boca Raton, Florida, and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Greene Defendants.

20. Upon information and belief, Defendant, Eric Greene ("Eric Greene" and collectively as the "Greene Defendants") is an individual residing in Fort Lauderdale, Florida, and is the president, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Greene Defendants.

21. Upon information and belief, Defendant, Sharyn Greene ("Sharyn Greene" and collectively as the "Greene Defendants") is an individual residing at 19868 Dinner Key Drive, Boca Raton, Florida, and is an officer, director, shareholder,

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

owner, proprietor and operator of the various corporate entities comprising the Greene Defendants.

22.     Upon information and belief, Defendant Resorts Superstore, Inc. d/b/a Nautical Breeze is a Florida Corporation with a principal place of business at 3146 NE 9th Street Fort Lauderdale, Florida (hereinafter with Pinchas Babayoff collectively referred to as the "Nautical Defendants").

23.     Upon information and belief, Defendant Pinchas Babayoff (hereinafter with Resorts Superstore, Inc. d/b/a Nautical Breeze collectively referred to as the "Nautical Defendants") is an individual with an address of 3146 N.E. 9th Street, Fort Lauderdale, Florida.

24.     Upon information and belief, Defendant Ocean 14, Inc. ("Ocean" and collectively as "Ocean Defendants") is a Florida corporation with a principal address of 1345 Washington Ave, Miami Florida.

25.     Upon information and belief, Defendant Rouhad Ezzeddine (hereinafter "Ezzeddine" and collectively referred to as the "Ocean Defendants") is an individual with an address of 1345 Washington Ave, Miami, Florida.

26.     Upon information and belief, Defendant Beach Blitz Co. ("Blitz" and collectively the "Blitz Defendants") is a Florida corporation with a principal place of business at 13441 N.W. 5th Court, Plantation, Florida, with retail locations at 1200 Ocean Drive, Miami Beach, Florida, 1111 Collins Ave, Miami Beach, Florida and 865 Collins Ave, Miami Beach, Florida.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

27.   Upon information and belief, Defendant Doron Dar (hereinafter with Beach Blitz Co. collectively referred to as the "Blitz Defendants") is an individual with an address of 13441 NW 5th Court, Fort Lauderdale, Florida.

28.   Upon information and belief, Defendant Sportswear Town, Inc. (hereinafter collectively with Avraham Chanero as "Sportswear Defendants") is a Florida Corporation with a principal place of business at 1345 Washington Avenue, Miami, Florida, with a mailing address of 2526 N 38th Ave, Hollywood, Florida.

29.   Upon information and belief, Defendant Avraham Chanero (hereinafter with Sportswear Town, Inc. collectively referred to as the "Sportswear Defendants") is an individual with an address of 2526 N 38th Ave, Hollywood, Florida.

30.   Upon information and belief, Defendant Keny, Inc.("Keny" and collectively with 853 North Atlantic Boulevard Corp., This & That, Inc., Baba's Jewelry, Inc., 437 South Atlantic Boulevard Corp., Lalwani Enterprises, Inc., Narain Lalwani, Jamna Lalwani, Devkrishin Lalwani, Mohan Lalwani and Shandkardas Lalwani as the "Lalwani Defendants") is a Florida Corporation with a principal place of business at 3132 NE 9th Street, Fort Lauderdale, Florida.

31.   Upon information and belief, Defendant 853 North Atlantic Boulevard Corp. ("853" and collectively with Keny, Inc., This & That, Inc., Baba's Jewelry, Inc., 437 South Atlantic Boulevard Corp., Lalwani Enterprises, Inc., Narain Lalwani, Jamna Lalwani, Devkrishin Lalwani, Mohan Lalwani and Shandkardas Lalwani as the "Lalwani Defendants") is a Florida Corporation with a principal place of business at 853 N. Atlantic Boulevard, Fort Lauderdale, Florida.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

32.     Upon information and belief, Defendant Baba's Jewelry, Inc. ("Baba" and collectively with Keny, Inc., 853 North Atlantic Boulevard Corp., This & That, Inc., 437 South Atlantic Boulevard Corp., Lalwani Enterprises, Inc., Narain Lalwani, Jamna Lalwani, Devkrishin Lalwani, Mohan Lalwani and Shandkardas Lalwani as the "Lalwani Defendants") is a Florida Corporation with a principal place of business at 853 North Atlantic Boulevard, Four Lauderdale, Florida.

33.     Upon information and belief, Defendant This & That, Inc. ("T&T" and collectively with Keny, Inc., 853 North Atlantic Boulevard Corp., Baba's Jewelry, Inc., 437 South Atlantic Boulevard Corp., Lalwani Enterprises, Inc., Narain Lalwani, Jamna Lalwani, Devkrishin Lalwani, Mohan Lalwani and Shandkardas Lalwani as the "Lalwani Defendants") is a Florida Corporation with a principal place of business c/o Sunwear, Inc., 853 North Atlantic Boulevard, Four Lauderdale, Florida.

34.     Upon information and belief, Defendant 437 South Atlantic Boulevard, Corp. d/b/a Cheshire Cat ("437" and collectively with Keny, Inc., 853 North Atlantic Boulevard Corp., Baba's Jewelry, Inc., This & That, Inc., Lalwani Enterprises, Inc., Narain Lalwani, Jamna Lalwani, Devkrishin Lalwani, Mohan Lalwani and Shandkardas Lalwani as the "Lalwani Defendants") is a Florida Corporation with a principal place of business at 853 North Atlantic Boulevard, Four Lauderdale, Florida.

35.     Upon information and belief, Defendant Lalwani Enterprises, Inc.("Lalwani" and collectively with Keny, Inc., 853 North Atlantic Boulevard Corp., This & That, Inc., Baba's Jewelry, Inc., 437 South Atlantic Boulevard Corp., Narain Lalwani,

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

Jamna Lalwani, Devkrishin Lalwani, Mohan Lalwani and Shandkardas Lalwani as the "Lalwani Defendants") is a Florida Corporation with a principal place of business at c/o Shankardas Lalwani 3132 NE 9th Street, Fort Lauderdale, Florida.

36.    Upon information and belief, Defendant, Narain Lalwani ("Narain" and collectively as the "Lalwani Defendants") is an individual with an address of 3000 E. Sunrise Boulevard, 3B, Fort Lauderdale, Florida, and also 853 N. Atlantic Boulevard, Fort Lauderdale, Florida, and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Lalwani Defendants.

37.    Upon information and belief, Defendant, Jamna Lalwani ("Jamna" and collectively as the "Lalwani Defendants") is an individual with an address of 853 N. Atlantic Boulevard, Fort Lauderdale, Florida, and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Lalwani Defendants.

38.    Upon information and belief, Defendant, Devkrishin Lalwani ("Devkrishin" and collectively as the "Lalwani Defendants") is an individual with an address of 853 N. Atlantic Boulevard, Fort Lauderdale, Florida, and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Lalwani Defendants.

39.    Upon information and belief, Defendant, Mohan Lalwani ("Mohan" and collectively as the "Lalwani Defendants") is an individual with an address of 853 N. Atlantic Boulevard, Fort Lauderdale, Florida, and is an officer, director,

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

shareholder, owner, proprietor and operator of the various corporate entities comprising the Lalwani Defendants.

40.     Upon information and belief, Defendant, Shandkardas Lalwani ("Shandkardas" and collectively as the "Lalwani Defendants") is an individual with an address of 3000 E. Sunrise Boulevard #5-C, Fort Lauderdale, Florida and 853 N. Atlantic Boulevard, Fort Lauderdale, Florida, and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Lalwani Defendants.

41.     Upon information and belief, Defendant Sunwear U.S.A., Inc. ("Sunwear" and collectively with Style In, Corp., Duval Style, Inc., Cool Style USA, Inc., Bikini Key, Inc., Wild Style USA, Inc., Neil Nissan Hamuy, Eliahu Hamuy, Jamie Hamuy and Steven Kraft collectively as the "Sunwear Defendants") is a Florida Corporation with a principal place of business at 405 S. Atlantic Boulevard, Fort Lauderdale, Florida, with mailing addresses of c/o Kraft P.A. 934 N. University Drive #56, Coral Springs, Florida and 766 Riverside Drive, Coral Springs, Florida.

42.     Upon information and belief, Defendant Style In, Corp. ("Style" and collectively with Sunwear U.S.A., Inc., Duval Style, Inc., Cool Style USA, Inc., Bikini Key, Inc., Wild Style USA, Inc., Sunset Sport Corp., Neil Nissan Hamuy, Eliahu Hamuy, Jamie Hamuy and Steven Kraft collectively as the "Sunwear Defendants") is a Florida Corporation with a principal place of business 405 S. Atlantic Boulevard, Fort Lauderdale, Florida with mailing addresses c/o Kraft

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

P.A. 934 N. University Drive #56, Coral Springs, Florida and 766 Riverside Drive, Coral Springs, Florida.

43.     Upon information and belief, Defendant Duval Style, Inc. ("Duval" and collectively with Sunwear U.S.A., Inc., Style In, Corp., Cool Style USA, Inc., Bikini Key, Inc., Wild Style USA, Inc., Sunset Sport Corp., Neil Nissan Hamuy, Eliahu Hamuy, Jamie Hamuy and Steven Kraft collectively as the "Sunwear Defendants") is a Florida Corporation with a principal place of business at 101 Duval Street, Key West, Florida, with a mailing address c/o Kraft P.A. 934 N. University Drive #56, Coral Springs, Florida.

44.     Upon information and belief, Defendant Bikini Key, Inc. ("Bikini" and collectively with Sunwear U.S.A., Inc., Style In, Corp., Cool Style USA, Inc., Duval Style, Inc., Wild Style USA, Inc., Sunset Sport Corp., Neil Nissan Hamuy, Eliahu Hamuy, Jamie Hamuy and Steven Kraft collectively as the "Sunwear Defendants") is a Florida Corporation with a principal place of business at 101 Duval Street, Key West, Florida, with mailing addresses c/o Kraft P.A. 934 N. University Drive #150, Coral Springs, Florida and 766 Riverside Drive, Coral Springs, Florida.

45.     Upon information and belief, Defendant Cool Style USA, Inc. ("Cool" and collectively with Sunwear U.S.A., Inc., Style In, Corp., Duval Style, Inc., Bikini Key, Inc., Wild Style USA, Inc., Sunset Sport Corp., Neil Nissan Hamuy, Eliahu Hamuy, Jamie Hamuy and Steven Kraft collectively as the "Sunwear Defendants") is a Florida Corporation with a principal place of business at 934 N. University Drive #250, Coral Springs, Florida.

46.     Upon information and belief, Defendant Wild Style USA, Inc. ("Wild" and collectively with Sunwear U.S.A., Inc., Style In, Corp., Cool Style USA, Inc., Bikini Key, Inc., Duval Style Inc., Sunset Sport Corp., Neil Nissan Hamuy, Eliahu Hamuy, Jamie Hamuy and Steven Kraft collectively as the "Sunwear Defendants") is a Florida Corporation with a principal place of business at 12801 Village Boulevard, Madeira Beach, Florida, with a mailing address of 934 N. University Drive #250, Coral Springs, Florida.

47.     Upon information and belief, Defendant Sunset Sport Corp. ("Sunset" and collectively with Sunwear U.S.A., Inc., Style In, Corp., Cool Style USA, Inc., Bikini Key, Inc., Duval Style Inc., Wild Style USA, Inc., Neil Nissan Hamuy, Eliahu Hamuy, Jamie Hamuy and Steven Kraft collectively as the "Sunwear Defendants") is a Florida Corporation with a principal place of business at 101 Duval Street, Ste. 101 Key West, Florida, with mailing addresses of 934 N. University Drive #250, Coral Springs, Florida and 766 Riverside Drive, Coral Springs, Florida.

48.     Upon information and belief, Defendant, Neil Nissan Hamuy (individually and collectively as the "Sunwear Defendants") is an individual with an address of 405 S. Atlantic Boulevard, Fort Lauderdale, Florida, 417 S. Atlantic Boulevard, Fort Lauderdale, Florida, 101 Duval Street, Key West, Florida, 934 N. University Drive, Suite 250, Coral Springs, Florida, 12801 Village Boulevard, Madeira Beach, Florida and 9629 Park View Ave. Boca Raton, Florida, and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Sunwear Defendants.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

49. Upon information and belief, Defendant, Jamie Hamuy (individually and collectively as the "Sunwear Defendants") is an individual with an address of 934 N. University Drive, Suite 250, Coral Springs, Florida, and 9629 Park View Ave, Boca Raton, Florida, and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Sunwear Defendants.

50. Upon information and belief, Defendant, Eliahu Hamuy (individually and collectively as the "Sunwear Defendants") is an individual with an address of 417 S. Atlantic Boulevard, Fort Lauderdale, Florida, and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Sunwear Defendants.

51. Upon information and belief, Defendant, Steven Kraft ("Kraft" and collectively as the "Sunwear Defendants") is an individual with an address of 934 N. University Drive, Suite 250, Coral Springs, Florida and 12801 Village Boulevard, Madeira Beach, Florida, and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Sunwear Defendants.

52. Upon information and belief, Defendant SEF Management, Inc. d/b/a Excess ("SEF" and collectively with Ronen Hayun and Hiam Hayun collectively as the "Excess Defendants.") is a Florida Corporation with a principal place of business at 1656 Collins Ave, Miami Beach, Florida.

53. Upon information and belief, Defendant, Ronen Hayun ("Ronen" and collectively as the "Excess Defendants") is an individual with an address of 1800 Sunset Harbor Apt. 1802, Miami Beach, Florida and is an officer, director, shareholder,

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

owner, proprietor and operator of the various corporate entities comprising the Excess Defendants.

54.    Upon information and belief, Defendant, Hiam Hayun ("Ronen" and collectively as the "Excess Defendants") is an individual with an address of 1656 Collins Ave, Miami Beach, Florida and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Excess Defendants.

55.    Upon information and belief, Defendant Gravity Clothing, Inc. ("Gravity" and collectively with Neno Botton, Brian Botton and Dino Petreccia collectively as the "Gravity Defendants") is a Florida Corporation with a principal place of business at 843 Washington Avenue, Miami Beach, Florida and 1090 Kane Concourse #202, Bay Harbor Islands, Florida.

56.    Upon information and belief, Defendant, Neno Botton ("Neno" and collectively as the "Gravity Defendants") is an individual with an address of 843 Washington Ave, Miami Beach, Florida and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Gravity Defendants.

57.    Upon information and belief, Defendant, Brian Botton ("Brian" and collectively as the "Gravity Defendants") is an individual with an address of 1100 W. Ave #1514, Miami Beach, Florida and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Gravity Defendants.

58.    Upon information and belief, Defendant, Dino Petreccia ("Petreccia" and collectively as the "Gravity Defendants") is an individual with an address of 843

15

Washington Ave, Miami Beach, Florida and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Gravity Defendants.

59.     Upon information and belief, Defendant Mosh Pitt ("Mosh" and collectively with Alex Zarfati and Marco Zarfati as the "Mosh Defendants") is a Florida Corporation with a principal place of business at 1417 Washington Avenue, Miami Beach, Florida.

60.     Upon information and belief, Defendant, Alex Zarfati ("Alex" and collectively as the "Mosh Defendants") is an individual with an address of 230 174th Street #1514, Sunny Isles Beach, Florida and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Mosh Defendants.

61.     Upon information and belief, Defendant, Marco Zarfati ("Marco" and collectively as the "Mosh Defendants") is an individual with an address of 1417 Washington Avenue, Miami Beach, Florida, and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Mosh Defendants.

62.     Upon information and belief, Defendant Smile Mon Inc. ("Smile Mon" and collectively with Smile Mon of Key West Inc. and Yaron Blives a/k/a Yaron Blives as the "Smile Mon Defendants") is a Florida Corporation with a principal place of business at 120 Duval Street, Key West, Florida and also at 300 Front Street, Key West, Florida.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

63.   Upon information and belief, Defendant Smile Mon of Key West Inc. ("Smile Mon Key West" and collectively with Smile Mon Inc. and Yaron Blives a/k/a Yaron Blives as the "Smile Mon Defendants") is a Florida Corporation with a principal place of business at 300 Front Street, Key West, Florida.

64.   Upon information and belief, Defendant, Yakov Blives a/k/a Yaron Blives ("Blives" and collectively as the "Smile Mon Defendants") is an individual with an address of 1437 12th Street, Key West Florida, and 120 Duval Street, Key West, Florida and also at 300 Front Street, Key West, Florida and is an officer, director, shareholder, owner, proprietor and operator of the various corporate entities comprising the Smile Mon Defendants.

## JURISDICTION AND VENUE

65.   This Court has original jurisdiction over this matter pursuant to 15 U.S.C. §1121, 28 U.S.C. § 1338, 28 U.S.C. § 1331, and 28 U.S.C. § 1332. The Court also has pendent jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

66.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b).

## FACTS COMMON TO ALL COUNTS

67.   Hope Road, is the owner of a federal trademark registration in and to the name "Bob Marley" for, inter alia, class 25 for tee shirts.  The Registration is listed on the Principal Register with the United States Patent and Trademark office.  A true copy of the Registration is annexed hereto and incorporated herein by reference as Exhibit "1".

68.   In addition, Hope Road is the owner and exclusive licensor of certain rights in the picture, name, photograph, likeness, image, signature and other indicia of the late

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

Bob Marley (hereinafter the trademark and publicity rights are collectively referred to as the "Marley Rights"). The Corporation is owned, operated and controlled by the surviving children of the late Bob Marley.

69. On and before 1990, Hope Road, as the owner and exclusive licensor of the name Bob Marley, has used the Marley Rights in commerce on numerous products, including but not limited to tee shirts, thermal shirts, jackets, hats, caps, sweatshirts and other general merchandise.

70. On January 1, 1998, Zion entered into a Licensing Agreement with Hope Road, which grants Zion the world-wide exclusive right to use the Marley Rights on tee shirts (long and short) hats and other general merchandise (hereinafter referred to as the "Licensed Products").

71. As a result of its marketing and selling tee shirts hats and other general merchandise, Zion has gained recognition and good will in its trade name "Zion Rootswear" and also its use of the Registered Mark for the image, likeness, photograph, name, signature and other indicia of Marley depicted in its products.

72. Plaintiffs have actively marketed and sold the Licensed Product within numerous geographical territories, including the State of Florida.

73. Upon information and belief, the Greene Defendants are in the business of manufacturing, distributing, retailing, advertising, promoting and selling tee shirts hats and other general merchandise. Upon information and belief, the Greene Defendants have been manufacturing, distributing and selling tee shirts hats and other general merchandise bearing and/or depicting the Marley Rights, without a license and the products manufactured and sold by the Greene Defendants are

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

substantially similar to Zion's Registered Mark products and they create a likelihood of confusion as to the origin and constitute an infringement of the Plaintiffs' rights.

74.     In addition, upon information and belief the Nautical Defendants are in the business of operating retail sales locations and have been selling tee shirts hats and other general merchandise bearing and/or depicting the Marley Rights, without a license and the products sold by the Nautical Defendants are substantially similar to Zion's Registered Mark products and they create a likelihood of confusion as to the origin and constitute an infringement of the Plaintiffs' rights.

75.     In addition, upon information and belief the Ocean Defendants are in the business of operating retail sales locations and have been selling tee shirts hats and other general merchandise bearing and/or depicting the Marley Rights, without a license and the products sold by the Ocean Defendants are substantially similar to Zion's Registered Mark products and they create a likelihood of confusion as to the origin and constitute an infringement of the Plaintiffs' rights.

76.     In addition, upon information and belief the Blitz Defendants are in the business of operating retail sales locations and have been selling tee shirts hats and other general merchandise bearing and/or depicting the Marley Rights, without a license and the products sold by the Blitz Defendants are substantially similar to Zion's Registered Mark products and they create a likelihood of confusion as to the origin and constitute an infringement of the Plaintiffs' rights.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

77.     In addition, upon information and belief the Sportswear Defendants are in the business of operating retail sales locations and have been selling tee shirts hats and other general merchandise bearing and/or depicting the Marley Rights, without a license and the products sold by the Sportswear Defendants are substantially similar to Zion's Registered Mark products and they create a likelihood of confusion as to the origin and constitute an infringement of the Plaintiffs' rights.

78.     In addition, upon information and belief the Lalwani Defendants are in the business of operating retail sales locations and have been selling tee shirts hats and other general merchandise bearing and/or depicting the Marley Rights, without a license and the products sold by the Lalwani Defendants are substantially similar to Zion's Registered Mark products and they create a likelihood of confusion as to the origin and constitute an infringement of the Plaintiffs' rights.

79.     In addition, upon information and belief the Sunwear Defendants are in the business of operating retail sales locations and have been selling tee shirts hats and other general merchandise bearing and/or depicting the Marley Rights, without a license and the products sold by the Sunwear Defendants are substantially similar to Zion's Registered Mark products and they create a likelihood of confusion as to the origin and constitute an infringement of the Plaintiffs' rights.

80.     In addition, upon information and belief the Excess Defendants are in the business of operating retail sales locations and have been selling tee shirts hats and other

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

general merchandise bearing and/or depicting the Marley Rights, without a license and the products sold by the Excess Defendants are substantially similar to Zion's Registered Mark products and they create a likelihood of confusion as to the origin and constitute an infringement of the Plaintiffs' rights.

81.    In addition, upon information and belief the Gravity Defendants are in the business of operating retail sales locations and have been selling tee shirts hats and other general merchandise bearing and/or depicting the Marley Rights, without a license and the products sold by the Gravity Defendants are substantially similar to Zion's Registered Mark products and they create a likelihood of confusion as to the origin and constitute an infringement of the Plaintiffs' rights.

82.    In addition, upon information and belief the Mosh Defendants are in the business of operating retail sales locations and have been selling tee shirts hats and other general merchandise bearing and/or depicting the Marley Rights, without a license and the products sold by the Mosh Defendants are substantially similar to Zion's Registered Mark products and they create a likelihood of confusion as to the origin and constitute an infringement of the Plaintiffs' rights.

83.    In addition, upon information and belief the Smile Mon Defendants are in the business of operating retail sales locations and have been selling tee shirts hats and other general merchandise bearing and/or depicting the Marley Rights, without a license and the products sold by the Smile Mon Defendants are substantially similar to Zion's Registered Mark products and they create a

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

likelihood of confusion as to the origin and constitute an infringement of the Plaintiffs' rights.

84.    None of the Defendants have ever sought or obtained a license to manufacture, distribute or sell tee shirts, hats or any other product bearing and/or depicting the Marley Rights from either of the Plaintiffs.

85.    On or about September 9, 2005, an agent of Plaintiffs traveled to Platinum Image's retail location located at 900 W. Sunrise Boulevard and purchased infringing Marley product being offered for sale at that location.  A true photographic copy of the t-shirt is annexed hereto and incorporated herein by reference as Exhibit "2;" a true copy of the business card obtained from the location is annexed hereto and incorporated herein by reference as Exhibit "3."

86.    The t-shirt design being offered for sale at the Platinum Image Sunrise Boulevard location is an exact copy of one of Zion's Licensed Products.  A true representative sample of Zion Licensed Product is annexed hereto and incorporated herein by reference for comparison as Exhibit "2A."

87.    In addition, on or about September 26, 2005, an agent of Plaintiffs traveled to Platinum Image's location at 18364 NW 7th Ave and purchased infringing Marley product being offered for sale at that location.  A true photographic copy of the t-shirts are annexed hereto and incorporated herein by reference as Exhibits "4" and "5" respectively; a true copy of the business card obtained from the NW 7th Ave location is annexed hereto and incorporated herein by reference as Exhibit "6."

88.    The t-shirts purchased at the NW 7th Ave location are exact copies of Zion Licensed Products.  True representative samples of Zion Licensed Product are

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

annexed hereto and incorporated herein by reference for comparison as Exhibits "4A" and "5A" respectively. It is evident from the face of the t-shirts purchased at the NW 7th Ave location that the Greene Defendants are attempting to pass the goods off as the licensed products of Hope Road and Zion. Specifically, the unauthorized t-shirts contain on the face of the shirts in one instance an exact copy of the Bob Marley trademark logo, and in the second instance contains Hope Road and Zion's legal line that they place on the Licensed Products, despite the fact that these goods do not have their origin with either Hope Road or Zion.

89. In addition, on or about September 19, 2005, an agent of Plaintiffs traveled to Nautical Breeze located at 3146 NE 9th Street Fort Lauderdale, Florida and purchased infringing Marley product being offered for sale at that location. A true photographic copy of the t-shirts are annexed hereto and incorporated herein by reference as Exhibits "7" and "8" respectively; a true copy of the handwritten receipt confirming the purchase is annexed hereto and incorporated herein by reference as Exhibit "9."

90. The t-shirts purchased at the Nautical Breeze location are exact copies of Zion Licensed Products. True representative samples of Zion Licensed Product are annexed hereto and incorporated herein by reference for comparison as Exhibits "7A" and "8A" respectively. Again it is evident from the face of the t-shirts purchased at the Nautical location that both the Greene Defendants and the Nautical Defendants are attempting to pass the goods off as the licensed products of Hope Road and Zion, as the shirts from that location contain a copy of the Bob

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

Marley Trademark and the name of Zion Rootswear, despite the fact that these goods do not have their origin with either Hope Road or Zion.

91.    In addition, on or about January 23, 2006, an agent of Plaintiffs traveled to Ocean 14, Inc. and Sportswear Town, Inc. both located at 1345 Washington Ave, Miami, Florida and purchased infringing Marley product being offered for sale at these locations.    A true photographic copy of the t-shirts are annexed hereto and incorporated herein by reference as Exhibits "10" and "11" respectively; a true copy of the receipt confirming the purchase from Ocean 14 is annexed hereto and incorporated herein by reference as Exhibit "12," a true copy of the receipt confirming the purchase from Sportswear Town is annexed hereto and incorporated herein by reference as Exhibit "13."

92.    The t-shirt designs purchased at Ocean 14 and Sportswear Town are similar to designs Plaintiffs have seized and purchased from the Greene Defendants in the past and are clearly not Zion's authorized products.

93.    In addition, on or about January 22, 2006 and January 23, 2006, an agent of Plaintiffs traveled to Beach Blitz's retail location in   Florida and purchased infringing Marley product being offered for sale at that location.    A true photographic copy of the t-shirts are annexed hereto and incorporated herein by reference as Exhibits "14," "15" and "16" respectively; a true copy of the receipt confirming the purchase on January 22, 2006 is annexed hereto and incorporated herein by reference as Exhibit "17," a true copy of the receipt confirming the purchase on January 23, 2006 is annexed hereto and incorporated herein by reference as Exhibit "18."

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

94.    One of the t-shirts purchased at the Beach Blitz location is an exact copy of one of Zion's Licensed Products known as "Profiles", and even contains an exact copy of the "Bob Marley" trademark and Hope Road's legal line, but does not contain Zion's security tag.  The other designs purchased at this location are similar to designs that the Plaintiffs have seized and purchased from the Greene Defendants in the past.   A true representative sample of Zion Licensed Product "Profiles is annexed hereto and incorporated herein by reference for comparison as Exhibit "14A."  It is evident from the face of the t-shirts purchased at the Beach Blitz location that both the Greene Defendants and the Blitz Defendants are attempting to pass the goods off as the licensed products of Hope Road and Zion.

95.    In addition, on or about January 24, 2006, agents of Plaintiffs traveled to Keny Inc. and 853 North Fort Lauderdale, Florida, retail locations maintained by the Lalwani Defendants, and purchased infringing Marley product being offered for sale at these locations.  A true photographic copy of the t-shirts are annexed hereto and incorporated herein by reference as Exhibits "19" and "20" respectively; a true copy of the receipt confirming the purchase at Keny, Inc. is annexed hereto and incorporated herein by reference as Exhibit "21," a true copy of the business card provided as the receipt confirming the purchase at the 853 North Fort Lauderdale location is annexed hereto and incorporated herein by reference as Exhibit "22."

96.    One of the t-shirts purchased at the Keny, Inc. location is an exact copy of one of Zion's Licensed Products known as "Rasta Smoke."  A true representative sample of Zion's Licensed design Rasta Smoke is annexed as Exhibit "5A."  The other

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

design purchased from the Lalwani Defendants is similar to designs that the Plaintiffs have seized and purchased from the Greene Defendants in the past. It is evident from the face of the t-shirts purchased at Keny that both the Greene Defendants and the Lalwani Defendants are attempting to pass the goods off as the licensed products of Hope Road and Zion, as the shirts from that location contain an exact copy of Zion's Licensed Design and even contains a knock off of Zion's security tag, despite the fact that these goods do not have their origin with either Hope Road or Zion. A review of the print quality of the shirt as well as the depiction of the design reveals that the shirt does not have its origin with Zion Rootswear.

97.     Moreover, on or about January 19, 2006 and January 24, 2006, agents of Plaintiffs traveled to retail locations maintained by the Sunwear Defendants located at 405 South Fort Lauderdale Beach in Fort Lauderdale and 853 North Atlantic Boulevard, Fort Lauderdale, Florida and purchased infringing Marley product being offered for sale at these locations. A true photographic copy of the t-shirts are annexed hereto and incorporated herein by reference as Exhibits "23" thorough "30" respectively; a true copy of the receipts confirming the purchases are annexed hereto and incorporated herein by reference as Exhibits "31" and "32" respectively.

98.     All of the t-shirts purchased at the Sunwear locations are an exact copy of Zion's Licensed Designs, and are embossed in most instances with an exact copy of the "Bob Marley" trademark and Hope Road's legal line, but most do not contain Zion's security tag. The designs that do contain the security tag are of poor

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

printing quality and the stock t-shirt is of poor quality indicating that these goods do not have their origin with Zion Rootswear.

99.     Two of the t-shirts purchased from the Sunwear Defendants are designs known as "One Love" yet this design has never been used by Zion on a t-shirt only stickers. See Exhibit "23" which is the One Love purchased at 853 N. Atlantic Blvd. and "24" which is the One Love design purchased at the 405 S. Ft. Lauderdale location.

100.    Exhibit "25" is an exact copy of Zion's Licensed Design "Natty Dread." The shirt purchased at Sunwear contains Hope Road and Zion's legal line but not Zion's security tag. Compare Exhibit "25" to Zion licensed design Exhibit "4A."

101.    Exhibit "26" is an exact copy of Zion's Licensed Design "Rasta Smoke." The shirt purchased contains the Marley Trademark and Hope Road's legal line but not Zion's security tag.   Compare Exhibit "26" to Zion licensed design Exhibit "5A."

102.    Exhibit "27" likewise is an exact copy of Zion's Licensed Design "Rasta Smoke." The shirt purchased does not contain any legal line or Zion's security tag. Compare Exhibit "27" to Zion licensed design Exhibit "5A."

103.    Exhibit "28" is an exact copy of Zion's Licensed Design "Smoking." The shirt purchased contains the Marley Trademark and Hope Road's legal line and even Zion's security tag, but the printing quality and stock brand of t-shirt reveals that the shirt was not printed by Zion.. Compare Exhibit "28" to Zion licensed design Exhibit "28A."

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

104.   Exhibits "29" and "30" are exact copies of Zion's Licensed Designs "Rasta Smoke" and "Profiles." The shirts purchased contain the Marley Trademark and Hope Road's legal line and even Zion's security tag. However, the printing quality, and stock of t-shirt reveal that these shirts did not originate with Zion Rootswear. Compare Exhibit "29" with Zion Licensed Design Exhibit "5A," compare Exhibit "30" to Zion licensed design Exhibit "14A."

105.   Moreover, on or about April 12, 2006 an agent of Plaintiffs traveled to another retail location maintained by the Sunwear Defendants located at 101 Duval Street in Key West, Florida (identified as both Bikini Key and Sunset Sports) and purchased infringing Marley product being offered for sale at this location. A true photographic copy of the t-shirt is annexed hereto and incorporated herein by reference as Exhibit "33;" a true copy of the receipt confirming the purchase is annexed hereto and incorporated herein by reference as Exhibit "34."

106.   Exhibit "33" is an exact copy of Zion's Licensed Design "Natty Dread." The shirt purchased contains Hope Road's legal line but not Zion's security tag and the printing quality and stock brand of t-shirt also reveals that the shirt was not printed by Zion.. Compare Exhibit "33" to Zion licensed design Exhibit "4A." This is the same design purchased from the Greene Defendants' retail location. It is clear that the Sunwear Defendants and the Greene Defendants are attempting to pass these goods off as genuine articles of Plaintiffs, even though they do not have their origin with Plaintiffs.

107.   In addition, on or about February 7, 2006, an agent of Plaintiffs traveled to Excess located at 1652 Collins Ave in Miami Beach, Florida and purchased infringing

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

Marley product being offered for sale at that location. A true photographic copy of the t-shirt is annexed hereto and incorporated herein by reference as Exhibit "35;" a true copy of the receipt and business card confirming the purchase are annexed hereto and incorporated herein by reference as Exhibit "36."

108.    The t-shirt purchased at Excess is an exact copy of Zion Licensed "Rasta Smoke" design. Compare Exhibit "35" with Zion Licensed Design Exhibit "5A." It is evident from the face of the t-shirts purchased at Excess that both the Greene Defendants and the Excess Defendants are attempting to pass the goods off as the licensed products of Hope Road and Zion, as the shirts from that location contain a copy of the Bob Marley Trademark and Hope Road's legal line, despite the fact that these goods do not have their origin with either Hope Road or Zion.

109.    In addition, on or about January 23, 2006, an agent of Plaintiffs traveled to Gravity Clothing located at 843 Washington Ave Miami Beach, Florida and purchased infringing Marley product being offered for sale at that location. True photographic copies of the t-shirts are annexed hereto and incorporated herein by reference as Exhibits "37" "38" "39" and "40;" a true copy of the receipt and business card confirming the purchase are annexed hereto and incorporated herein by reference as Exhibit "41."

110.    The t-shirts purchased at Gravity are similar to designs that Zion has seized and purchased from the Greene Defendants in the past. It is evident from the face of the t-shirts purchased at Gravity that both the Greene Defendants and the Gravity Defendants are attempting to pass the goods off as the licensed products of Hope

29

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

Road and Zion despite the fact that these goods do not have their origin with either Hope Road or Zion.

111. In addition, on or about January 23, 2006, an agent of Plaintiffs traveled to Mosh Pitt located at 1417 Washington Ave Miami Beach, Florida and purchased an infringing Marley product being offered for sale at that location. A true photographic copy of the t-shirt is annexed hereto and incorporated herein by reference as Exhibits "42;" a true copy of the receipt confirming the purchase is annexed hereto and incorporated herein by reference as Exhibit "43."

112. The t-shirt purchased at Mosh Pitt is similar to a design that Zion has seized and purchased from the Greene Defendants in the past. It is evident from the face of the t-shirt purchased at Mosh Pitt that both the Greene Defendants and the Mosh Pitt Defendants are attempting to pass the goods off as the licensed products of Hope Road and Zion despite the fact that these goods do not have their origin with either Hope Road or Zion.

113. In addition, on or about April 12, 2006, an agent of Plaintiffs traveled to retail locations maintained by the Smile Mon Defendants located at 120 Duval Street, Key West, Florida and 300 Front Street, Key West, Florida and purchased infringing Marley products being offered for sale at that location. A true photographic copy of the product is annexed hereto and incorporated herein by reference as Exhibits "44;" a true copy of the receipt confirming the purchase is annexed hereto and incorporated herein by reference as Exhibit "45."

114. The t-shirt purchased at Smile Mon is identical to Zion Licensed Design "Spray" and is similar to designs that Zion has seized and purchased from the Greene

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

Defendants in the past.  Compare Exhibit "44" with Zion Licensed Spray design annexed hereto and incorporated herein by reference as Exhibit "44A."   It is evident from the face of the t-shirt purchased at Smile Mon that both the Greene Defendants and the Smile Mon Defendants are attempting to pass the goods off as the licensed products of Hope Road and Zion despite the fact that these goods do not have their origin with either Hope Road or Zion.

115.   The Greene Defendants are in the business of manufacturing and distributing unauthorized t-shirts.  On three prior occasions the Plaintiffs have confiscated goods manufactured and sold by the Greene Defendants, having seized goods at AAA's manufacturing site, from booths operated by the Greene Defendants at the Fort Lauderdale Swap Shop in Fort Lauderdale, Florida and from retailers to whom the Greene Defendants have sold their unauthorized products.

116.   The Plaintiffs are familiar with the products manufactured, distributed and sold by the Greene Defendants.  The Plaintiffs have examined the infringing products purchased at Platinum Image and all of the other retail locations and it appears beyond doubt that these are designs created, manufactured and sold by the Greene Defendants.  The Greene Defendants are the proprietors of the Platinum retail location.  All of the Greene Defendants are bound by Permanent Injunction Orders issued by this Court, which restrains them from being involved in any manner with the manufacture, distribution and sale of any unauthorized goods.  Annexed hereto and incorporated herein by reference as Exhibits "46", "47" and "48" are true copies of the Permanent Injunction Orders against the Greene Defendants.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

117.   The Greene Defendants' manufacture, sale and distribution of unauthorized goods, as well as the sale of unauthorized goods by all of the other Defendants, constitutes trademark infringement of the world famous Bob Marley trademark, unfair competition under the Lanham Act, and infringement of the exclusive statutory and common law rights to publicity. The Greene Defendants' actions further constitute contempt of the Permanent Injunction Orders as well as breach of the Settlement Agreements entered into with Plaintiffs.

**COUNT I**
**_(Infringement of a Federally Registered Trademark)_**
**_(Fifty-Six Hope Road v. All Defendants)_**

118.   The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-117 and incorporates each herein by reference.

119.   Hope Road is the owner of a federal trademark registration 2,349,361 for, inter alia, class 25 for tee shirts. The Registration is listed on the Principal Register with the United States Patent and Trademark office. See Exhibit "1."

120.   The Defendants are using in commerce, without the Plaintiff's consent, a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's registered mark.

121.   The Defendants' use of the Plaintiff's registered trademark is likely to cause confusion and is in fact causing confusion, in violation of 15 U.S.C. § 1114(1) (a).

122.   Purchasers are likely to purchase the Defendants' goods bearing the "Bob Marley" trademark believing they are Plaintiff's authorized products.

123.   The Plaintiff has no control over the quality of the goods sold by the Defendants and because of the confusion as to the source engendered by such sale, the

32

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

Plaintiff's valuable goodwill in respect to its registered trademark is being irreparably harmed.

124. The use by the Defendants of the "Bob Marley" registered trademark on their expanded product lines has caused confusion and mistake and deception of purchasers as to the source of origin of its goods that falsely suggest that their Infringing Products are sponsored by, licensed by or otherwise affiliated with the Plaintiff. These actions constitute trademark infringement and are in violation of, inter alia 15 U.S.C. § 1114(a).

125. The use by the Defendants of the "Bob Marley" registered trademark has resulted in the dilution of Hope Road's exclusive rights.

126. The infringement by the Defendants has been willful and deliberate, designed specifically to trade upon the enormous goodwill associated with Plaintiff's registered trademark.

127. The goodwill of the Plaintiff's business under its "Bob Marley" registered trademark is of enormous value, and the Plaintiff will suffer irreparable harm should infringement be allowed to continue to the detriment of its trade reputation and goodwill.

128. Plaintiff has no adequate remedy at law available and is suffering and will continue to suffer irreparable harm and damages as a result of the aforesaid acts of the Defendants are enjoined and restrained from the manufacture, distribution, advertisement and sale of their Infringing Products.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

## COUNT II
### *(False Designation of Origin and Unfair Competition under 15 U.S.C. §1125 (a))*
### *(Fifty Six Hope Road v. All Defendants)*

129.   The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-128 and incorporates each herein by reference.

130.   Over the years, Hope Road has expended considerable resources in establishing the Bob Marley trademark in the minds of customers as a source of high quality product endorsed by the heirs of the late, great Reggae performer and songwriter. Hope Road is well known throughout the United States and the world as a source of origin for authorized Bob Marley product, including but not limited to tee shirts, hats and the like.

131.   The use by the Defendants of the "Bob Marley" trademark on their Infringing Products is likely to cause confusion or mistake or deception to the consuming public as to the source of origin of those goods.

132.   Purchasers are likely to purchase the Defendants' goods bearing the "Bob Marley" trademark believing they are Plaintiff's authorized products.

133.   The Plaintiff has no control over the quality of the goods sold and because of the confusion as to the source engendered by the Defendants, the Plaintiff's valuable goodwill in respect to its trademark will be irreparably harmed.

134.   The use by the Defendants of the "Bob Marley" trademark on their expanded product lines has caused confusion and mistake and deception of purchasers as to the source of origin of its goods which falsely suggest that their Infringing Products are sponsored by, licensed by or otherwise affiliated with the Plaintiff.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

These actions constitute unfair competition and a false designation of origin and are in violation of, inter alia 15 U.S.C. § 1125(a).

135. The infringement by the Defendants has been willful and deliberate, designed specifically to trade upon the enormous goodwill associated with Plaintiff's trademark.

136. The goodwill of the Plaintiff's business under its "Bob Marley" registered trademark is of enormous value, and the Plaintiff is suffering and will suffer irreparable harm should infringement be allowed to continue to the detriment of its trade reputation and goodwill.

137. Plaintiff has no adequate remedy at law available and is suffering and will continue to suffer irreparable harm and damages as a result of the aforesaid acts of the Defendants, unless the Defendants are enjoined and restrained from the manufacture, distribution, advertisement and sale of their Infringing Products.

### COUNT III
### (Violation of Common Law Rights of Publicity.)
### (Fifty-Six Hope Road v. All Defendants)

138. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-137 and incorporates each herein by reference.

139. HOPE ROAD is a corporation owned, operated and controlled by the surviving children of Bob Marley.

140. Marley was a singer and performer who gained worldwide renown for his image, name, likeness, music and performances. For many years before his death, Marley worked diligently to become and became an extremely successful songwriter, vocalist, musician, and recording artist. As a consequence of his

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

abilities and efforts, Marley created a general acceptance and good will for his name and likeness, the effect of which was to create an absolute, incorporeal, and transferable property right with a substantial commercial value in the eyes of the public.

141.    Said rights descended to his heirs upon Marley's death and are now owned and controlled by HOPE ROAD.   Accordingly, the Plaintiff in this claim for relief owns the valuable right of publicity in connection with Marley's name, photograph, image, persona, likeness and reputation.

142.    Bob Marley was domiciled at the time of his death in Jamaica, and his estate, without objection, was submitted for probate in 1981 in Jamaica.   Jamaica recognizes a post-mortem right of publicity.   See Decision of the Jamaican Supreme Court annexed hereto as Exhibit "49."

143.    The Defendants are each using, without the Plaintiff's permission, identifiable aspects of Marley's identity for promotional and advertising purposes and are falsely and misleadingly implying that the Plaintiff promotes, sponsors and/or has endorsed their Infringing Products.

144.    The Defendants are each infringing upon HOPE ROAD' exclusive common law rights of publicity under Jamaican Law  and are falsely misleading the public that HOPE ROAD endorses, sponsors, promotes, sanctions or is otherwise affiliated with them.

145.    HOPE ROAD has not granted the Defendants a license or other authorization to use the Marley Rights in the manner in which they used and continue to use those property rights as averred above.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

146.   The acts and conduct of the Defendants, and each of them, alleged above
constitute a violation of HOPE ROAD's common law right of publicity in that
their appropriation of Marley's name, photograph, image, persona and likeness
was intended to promote, advertise, and solicit sales of infringing merchandise by
members of the public and for the purpose of generating substantial profits. Said
appropriation was for the Defendants' advantage in that the Marley Rights were
used to create and enhance their pecuniary gain and profit resulting from the
promotion and advertisement and to boost and increase sales of their Infringing
Products.

147.   As a proximate result of the acts and conduct of the Defendants, and each of
them, as alleged above, HOPE ROAD has suffered damages.

148.   As a proximate result of the acts and conduct of the Defendants, and each of
them, alleged above, the Defendants, and each of them, have earned and will
continue to earn profits as a result of the use of the Marley Rights in an amount
which is not yet known with precision but which will be proved at trial. HOPE
ROAD is entitled to recover all the profits earned by the Defendants as a result of
their unauthorized use of the Marley Rights for commercial purposes.

149.   Upon information and belief, the Defendants, and each of them, knew that HOPE
ROAD owned the exclusive rights to publicity and was the only entity that could
authorize the use of the Marley Rights. Upon further information and belief each
of them, knew that they did not have the right, permission or authority from
HOPE ROAD that they needed to have in order to manufacture, promote and sell
merchandise containing the Marley Rights. Notwithstanding this knowledge, the

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

Defendants, and each of them, intentionally, willfully, fraudulently and maliciously engaged in the wrongful conduct alleged above in conscious disregard of HOPE ROAD's rights. By reason of the foregoing, HOPE ROAD is entitled to an award of exemplary damages against them, jointly and severally.

150.    Upon information and belief, the Defendants threaten and continue to threaten to engage in the infringing acts and conduct hereinabove averred and, unless restrained and enjoined from doing so by this Court, will continue to engage in said wrongdoing. Plaintiff has no adequate remedy at law to address these wrongs. Plaintiff seeks to enjoin them from doing business and using the name, image, likeness, signature or other indicia of Marley or any other trademark so similar to the Plaintiff's trademark that their products are likely to be mistaken for Plaintiff's. HOPE ROAD will sustain great and irreparable injury that cannot be wholly and adequately compensated or measured in monetary damages unless said infringing acts and conduct is enjoined preliminarily pending trial and permanently after trial. HOPE ROAD has no plain, speedy or adequate remedy at law, and by reason thereof, is entitled to a preliminary and permanent injunction.

### COUNT IV
**(Unauthorized Publication of Name or Likeness 540.08 Fla. Stat.)**
**(Fifty Six Hope Road v. All Defendants)**

151.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs 150 and incorporates each herein by reference.

152.    HOPE ROAD is a corporation owned, operated and controlled by the surviving children of Bob Marley.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

153.   Marley was a singer and performer who gained worldwide renown for his image, name, likeness, music and performances.   For many years before his death, Marley worked diligently to become and became an extremely successful songwriter, vocalist, musician, and recording artist.   As a consequence of his abilities and efforts, Marley created a general acceptance and good will for his name and likeness, the effect of which was to create an absolute, incorporeal, and transferable property right with a substantial commercial value in the eyes of the public.

154.   Said rights descended to his heirs upon Marley's death and are now owned and controlled by HOPE ROAD.   Accordingly, the Plaintiff in this claim for relief owns the valuable right of publicity in connection with Marley's name, photograph, image, persona, likeness and reputation and is the entity authorized to bring suit as set forth under 540.08 (1) (c).

155.   All of the Defendants are using, without the Plaintiff's permission, identifiable aspects of Marley's identity for promotional and advertising purposes and are falsely and misleadingly implying that the Plaintiff promotes, sponsors and/or has endorsed their Infringing Products.

156.   All of the Defendants are publishing, printing, displaying and otherwise publicly using Marley's name, portrait, photograph or other likeness and image for purposes of trade or for commercial or advertising purposes without the express written or oral consent of Hope Road.

157.   All of the Defendants are each infringing upon HOPE ROAD' exclusive statutory publicity rights.

39

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

158.  HOPE ROAD has not granted any of the Defendants a license or other authorization to use the Marley Rights in the manner in which they used and continue to use those property rights as averred above.

159.  The acts and conduct of all of the Defendants, and each of them, alleged above constitute a violation of HOPE ROAD's statutory right of publicity in that their appropriation of Marley's name, photograph, image, persona and likeness was intended to promote, advertise, and solicit sales of infringing merchandise by members of the public and for the purpose of generating substantial profits. Said appropriation was for the Defendants' advantage in that the Marley Rights were used to create and enhance their pecuniary gain and profit resulting from the promotion and advertisement and to boost and increase sales of their Infringing Products.

160.  As a proximate result of the acts and conduct of the Defendants, and each of them, as alleged above, HOPE ROAD has suffered damages.

161.  As a proximate result of the acts and conduct of the Defendants, and each of them, alleged above, the Defendants, and each of them, have earned and will continue to earn profits as a result of the use of the Marley Rights in an amount which is not yet known with precision but which will be proved at trial.   HOPE ROAD is entitled to recover all the profits earned by the Defendants as a result of their unauthorized use of the Marley Rights for commercial purposes as well as recovery of a reasonable royalty and punitive or exemplary damages.

162.  Upon information and belief, the Defendants, and each of them, knew that HOPE ROAD owned the exclusive rights to publicity and was the only entity that could

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

authorize the use of the Marley Rights. Upon further information and belief each of them, knew that they did not have the right, permission or authority from HOPE ROAD that they needed to have in order to manufacture, promote and sell merchandise containing the Marley Rights. Notwithstanding this knowledge, the Defendants, and each of them, intentionally, willfully, fraudulently and maliciously engaged in the wrongful conduct alleged above in conscious disregard of HOPE ROAD's rights. By reason of the foregoing, HOPE ROAD is entitled to an award of exemplary damages against them, jointly and severally.

163.    Upon information and belief, the Defendants threaten and continue to threaten to engage in the infringing acts and conduct hereinabove averred and, unless restrained and enjoined from doing so by this Court, will continue to engage in said wrongdoing. Plaintiff has no adequate remedy at law to address these wrongs. Plaintiff seeks to enjoin them from doing business and using the name, image, likeness, signature or other indicia of Marley or any other trademark so similar to the Plaintiff's trademark that their products are likely to be mistaken for Plaintiff's. HOPE ROAD will sustain great and irreparable injury that cannot be wholly and adequately compensated or measured in monetary damages unless said infringing acts and conduct is enjoined preliminarily pending trial and permanently after trial. HOPE ROAD has no plain, speedy or adequate remedy at law, and by reason thereof, is entitled to a preliminary and permanent injunction.

**COUNT V**
***(Common Law Trade Mark Infringement)***
***(Fifty-Six Hope Road v. All Defendants)***

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

164.   Plaintiff repeats and re-alleges each and every allegation contained in Paragraphs
1 –163 and incorporates each herein by reference.

165.   Plaintiff's use of its trademark, name, image, likeness, signature and other indicia
of Marley has been sufficiently extensive so that members of the public on seeing
the Defendants' use of the Marley name, image, likeness, signature and other
indicia for design on or for clothing are actually being deceived or confused and
others will likely be deceived or confused and believe that the Defendants'
products have their origins with Plaintiff or are sponsored by or affiliated with
Plaintiff.

166.   Plaintiff has no adequate remedy at law and is suffering and unless the
Defendants are enjoined will continue to suffer irreparable harm and damage as a
result of the aforesaid unlawful acts.

167.   The wrongful acts as set forth above have caused Plaintiff to suffer and will
continue to cause Plaintiff to suffer damages in an amount to be determined by the
trier of fact.

168.   These actions constitute infringement of Plaintiff's common law trademark rights.

## COUNT VI
### (Breach of Contract/Settlement Agreement)
### (Plaintiffs v. AAA Silk Screen, David Greene & Eric Greene)

169.   Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1
–168 and incorporate each herein by reference.

170.   In March of 2002, Plaintiffs commenced an action in the United States District
Court Southern District of Florida (hereinafter "March 2002 Litigation") against
AAA Silk Screen Corp. and its officers, directors, shareholders and employees,

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

for among other things infringement and unfair competition under the Lanham Act.

171. David and Eric Greene in March of 2002 were each officers, directors, shareholders and employees of AAA Silk Screen Corp.

172. After securing an ex-parte seizure order. the Plaintiffs seized several hundred pieces of infringing Bob Marley merchandise from AAA Silk Screen Corp.

173. In that litigation, AAA Silk Screen Corp. and its officers, directors, shareholders and employees consented to the entry of a permanent injunction (Exhibit "46") in favor of the Plaintiffs and further entered into a Settlement Agreement whereby they agreed to among other things, refrain from any further utilization of the Plaintiff's trademark rights, and to pay certain financial penalties if they engaged in any further infringement of the Plaintiffs rights.  A true copy of the April 8, 2002 Settlement Agreement is annexed hereto and incorporated herein by reference as Exhibit "50."

174. Despite the permanent injunction order and despite the Settlement Agreement, the Defendants AAA Silk Screen Corp., Eric Greene and David Greene violated those agreements and continued to manufacture, distribute and sell merchandise that infringed upon the Plaintiffs trademark rights.

175. Specifically, in June of 2002, the Plaintiffs commenced an action in the United States District Court Southern District of Florida (Fort Lauderdale) (hereinafter "June 2002 Litigation") against several proprietors at the Fort Lauderdale Swap Shop.

176.    When effectuating the ex-parte seizure order at the Swap Shop, the Plaintiffs discovered Mr. David Greene, individual and officer and director of AAA Silk Screen Corp., offering for sale infringing merchandise in violation of the April 2002 Permanent Injunction Order and April 2002 Settlement Agreement.

177.    As a result of the June 2002 Litigation, David Greene consented to the entry of a second permanent injunction order (Exhibit "47") against him and any companies in active concert or participation with him (including AAA Silk Screen Corp.) from engaging in any further infringement and unfair competition of the Plaintiffs' trademark rights.

178.    David Greene and those companies in active concert or participation with him entered into a second Settlement Agreement in August of 2002 and again agreed to refrain from any further utilization or infringement of the Plaintiff's trademark rights.   A true copy of the August 30, 2002 Settlement Agreement is annexed hereto and incorporated herein by reference as Exhibit "51."

179.    Despite the permanent injunction order and despite the Settlement Agreements, the Defendants AAA Silk Screen Corp., Eric Greene and David Greene violated those agreements and continued to manufacture, distribute and sell merchandise that infringed upon the Plaintiff's trademark rights.

180.    Specifically, on December 13, 2002, the Plaintiffs commenced an action in the United States District Court Southern District of Florida (Miami) (hereinafter "December 2002 Litigation").

181.    After securing an ex-parte seizure order, the Plaintiffs seized several screens and t-shirts depicting Marley from the AAA Silk Screen Corp. location.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

182. In that litigation, AAA Silk Screen Corp. and David Greene and its officers, directors, shareholders and employees consented to the entry of a permanent injunction (Exhibit "48") in favor of the Plaintiffs (which was entered by the Court on December 5, 2003) and further entered into a Settlement Agreement dated January 20, 2004 whereby they agreed to among other things, refrain from any further utilization of the Plaintiff's trademark rights, and to pay certain financial penalties if they engaged in any further infringement of the Plaintiffs rights. A true copy of the January 20, 2004 Settlement Agreement is annexed hereto and incorporated herein by reference as Exhibit "52."

183. Despite the permanent injunction orders and despite the Settlement Agreements, the Defendants AAA Silk Screen Corp., Eric Greene and David Greene have again violated those agreements by continuing to manufacture, distribute and sell merchandise that infringes upon the Plaintiff's intellectual property rights.

184. Specifically, according to the Division of Corporations for the State of Florida printout and the 2005 Annual Report of AAA Silk Screen Corp., the officers of AAA are David Greene and Sharyn Greene, and the Company continues to list 2731 NW 30th Ave as its principal place of business. A true copy of the Division of Corporations Printout is annexed hereto and incorporated herein by reference as Exhibit "53;" a true copy of the 2005 Annual Report for AAA Silk Screen is annexed hereto and incorporated herein by reference as Exhibit "54." The officers of AAA continue to list their address as 19868 Dinner Key Drive, Boca Raton, Florida.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

185.     In addition, according to the Division of Corporations for the State of Florida printout and the most recent Annual Report filed by E.D.S. Enterprises, Inc., David Greene and Sharyn Greene were removed as officers and Eric Greene was appointed the sole officer on March 30, 2004, shortly after the January 2004 Settlement Agreement.   A true copy of the Division of Corporations printout is annexed hereto and incorporated herein by reference as Exhibit "55;" a true copy of the 2004 Annual Report for EDS is annexed hereto and incorporated herein by reference as Exhibit "56."  E.D.S. Enterprises lists is principal place of business at 900 W. Sunrise Boulevard, Fort Lauderdale, and its mailing address at 2731 NW 30th Street, Lauderdale Lakes, Florida, the same address utilized by AAA Silk Screen Corp.

186.     E.D.S. Enterprises is further the registered holder of two Fictitious Name Registrations for the name Platinum Image, said registrations having been obtained on January 30, 2002 and September 18, 2002 by David Greene.  True copies of the Registrations are annexed hereto and incorporated herein by reference as Exhibits "57" and "58" respectively.    The Registrations list the address of Platinum Image as 18364 NW 7th Avenue, Miami, Florida, the same location that investigators working on Plaintiff's behalf purchased unauthorized Bob Marley designs.

187.     In addition, on September 19, 2005, investigators working on Plaintiff's behalf purchased infringing designs from Nautical Breeze, which designs are identical to the designs being sold at Platinum Image.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

188.   These actions and other actions of the Greene Defendants of manufacturing, distributing and selling merchandise depicting the Marley Rights after the dates of the Settlement Agreements constitute breach of the Settlement Agreements.

189.   As the direct and proximate result of the Defendants breaches of the Settlement Agreements, the Plaintiffs have suffered damages.

### COUNT VII
### *(Specific Performance of Contract/Settlement Agreements)*
### *(Plaintiffs v. AAA Silk Screen & David Greene)*

190.   Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 –189 and incorporate each herein by reference.

191.   The Plaintiffs and the Greene Defendants entered into valid and enforceable Settlement Agreements wherein the Greene Defendants agreed to refrain from further violating the Plaintiff's intellectual property rights and agreed to an award of injunctive relief and fixed monetary damages in the event the Greene Defendants breached the Settlement Agreements.

192.   The Greene Defendants have, in breach of all of the Settlement Agreements, engaged in further acts of infringement of the Plaintiffs' intellectual property rights.

193.   Accordingly, the Plaintiffs are entitled to have the court specifically enforce the Settlement Agreements entered into between the Parties and award injunctive and monetary relief.

194.   The Plaintiffs have suffered damages as a direct and proximate result of the breaches of the Settlement Agreements entered into with the Greene Defendants.



CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiffs demand relief as follows:

A.    That after a hearing on the merits the Court issue an order permanently enjoining the Defendants, their partners, subsidiaries, officers, agents, servants, employees, attorneys and those persons or companies in active concert or participation with them from:

(a) Importing into or exporting to the United States, its territories or possessions, any goods which bear a copy of the name, image, likeness, photograph, signature or other indicia of Bob Marley or any confusingly similar variations thereon, which goods are not authorized by Plaintiffs for *sale in the United States or elsewhere (hereinafter called Marley goods)*:

(b) Exporting from, or importing into any foreign country from, the United States, its territories or possessions, any counterfeit Marley goods;

(c) Manufacturing, assembling, or participating in the manufacture or assembly of any counterfeit Marley goods;

(d) Infringing Plaintiffs' established proprietary rights in the Marley trademark and all protectable variations thereof and the rights to publicity, by further promoting advertising, publishing or offering for sale, goods which bear a copy of the name, image, likeness, photograph, signature or other indicia of Marley or any confusingly similar variations thereof;

(e) Otherwise infringing Plaintiffs' established proprietary rights at common law and in the above-identified mark and registration granted as to name, image, likeness, photograph, signature or other indicia of Bob Marley;

(f) Competing unfairly with Plaintiffs in any manner by continued use or sale of counterfeit Marley goods or any goods bearing or depicting the name, image, likeness, photograph, signature or other indicia of Marley or any colorable variations or imitations thereof;

(g) Further damaging Plaintiffs' established goodwill and reputation by diluting the distinctiveness of Plaintiffs' established proprietary rights in Marley by holding themselves out as having any business relationship with the Plaintiffs, or either of them.

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

(h) Competing unfairly with Plaintiffs by passing off counterfeit Marley goods as genuine goods of Plaintiffs; and

(i) Buying, selling or in any way dealing with counterfeit Marley goods or any goods bearing a copy of the Marley Rights or any colorable variations or imitations thereof.

B.  Under Count I that the Court determine and declare that:

 1)  the Defendants are using in commerce, without the Plaintiff's consent, a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's registered mark.

 2)  the Defendants' use of the Plaintiff's registered trademark is likely to cause confusion and is in fact causing confusion, in violation of 15 U.S.C. § 1114(1) (a).

C.  Under Counts II that the Court determine and declare that:

 1)  the Defendants each willfully and deliberately engaged in unfair competition by using the picture, name, image, likeness, signature and other indicia of Marley so as to infringe upon the Plaintiff's rights;

 2)  the use by the Defendants was each a false designation of origin which tended to falsely represent that their goods were supplied by, sponsored by or were affiliated with the Plaintiff;

 C.  Under Count III that the Court determine and declare that the Defendants each infringed the Plaintiff's common law rights of publicity in and to the name, image, likeness, photograph, trademark, signature and other indicia of Bob Marley by using said rights without authorization;

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

D.  Under Count IV that the Court determine and declare that the Defendants each infringed the Plaintiff's rights under 540.08 Fla. Stat. in and to the name, image, likeness, photograph, trademark, signature and other indicia of Bob Marley by using said rights without authorization;

E.  Under Count V that the Court determine and declare that the Defendants use of trademarks bearing the picture, name, image, likeness, signature and other indicia of Marley in connection with the sale of clothing was unauthorized and was so similar so as to cause confusion as to the source and origin of the goods and damaged the Plaintiff's goodwill and business reputation and violated the Plaintiff's common law trademark rights;

F.  Under Count VI that the court determine and declare that:

1) the Plaintiffs and the Defendants David Greene, Eric Greene and AAA Silk Screen Corp. entered into binding and enforceable contracts/settlement agreements;

2) the Defendants, David Greene, Eric Greene and AAA Silk Screen Corp. breached the contracts/settlement agreements with the Plaintiffs by manufacturing, distributing and selling infringing products depicting the Marley Rights and otherwise engaged in acts in violation of the Plaintiffs' rights;

3) as a result of the Greene Defendants' breaches of the Agreements, the Plaintiffs are entitled to an award of damages under Count V in the minimum amount of $350,000.00, plus attorneys' fees and costs.

G.  Under Count VII that the court determine and declare that:

CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

4) the Plaintiffs and the Defendants David Greene, Eric Greene and AAA Silk Screen Corp. entered into binding and enforceable contracts/settlement agreements;

5) the Defendants, David Greene, Eric Greene and AAA Silk Screen Corp. breached the contracts/settlement agreements with the Plaintiffs by manufacturing, distributing and selling infringing products depicting the Marley Rights and otherwise engaged in acts in violation of the Plaintiffs' rights;

6) as a result of the Greene Defendants' breaches of the Agreements, the Plaintiffs are entitled to specific enforcement of the Settlement Agreements including permanent injunctive relief and an award of damages in the minimum amount of $350,000.00, plus attorneys' fees and costs.

H. That Judgment issue against the Greene Defendants under Counts I, II, III, IV, V, VI and VII and against all of the remaining Defendants under Counts I, II, III, IV and V in an amount to be determined by the trier of fact, together with interest and costs;

I. That Plaintiffs be awarded damages for the injury to Plaintiffs' reputation, good will in an amount up to three times the actual damage and/or profit of the Defendants together with attorneys' fees, disbursement and costs of this action pursuant to 15 U.S.C. § 1117;

J. That HOPE ROAD be awarded exemplary damages in an amount sufficient to punish or set an example of the Defendants, and each of them, which



CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

amounts will be proved at trial pursuant to 540.08 Fla. Stat. and/or at common law:

K. That Plaintiffs be awarded their reasonable attorney's fees and costs;

L. That the Defendants be ordered to deliver any and all remaining infringing goods to the Plaintiffs for destruction pursuant to 15 U.S.C. § 1118, including an award of costs incurred by Plaintiffs for the destruction of such articles.

M. That Plaintiffs be awarded the Defendants' profits from their unlawful acts and that an accounting be rendered of such profit.

N. That the Plaintiffs be awarded such other and further relief as this Court deems just and equitable.

Respectfully submitted,
FIFTY-SIX HOPE ROAD MUSIC, LTD.
ZION ROOTSWEAR, LLC.
By its attorneys,

TIMOTHY J. ERVIN
JOHN F. GALLANT
GALLANT & ERVIN, LLC
One Olde North Road, Ste. 103
Chelmsford, MA  01824
(978) 256-6041
Fax: (978) 256-7977
Email: john@gallant-ervin.com
       tim@gallant-ervin.com



CASE NO. 06-20145-CIV-ALTONAGA/Turnoff

Local Counsel,
FIFTY-SIX HOPE ROAD MUSIC, LTD.
ZION ROOTSWEAR, LLC
By its attorneys,

MORTON RIVKIND
Morton Rivkind, P.A.
1481 N.W. North River Drive
Miami, FL 33125
(305) 545-6633
Fax: (305) 325-0080
Email: mrivkind@sprynet.com